In the United States District Court
For The Western District Of Wisconsin

United States of AMerica
                    Plaintiff

          vs

Andre Simmons
                    Defendant

)
)
)
)
)
)
)
)
)
)

13-CV-287

case number: 09-CR-122-bbc

## Request for notice of Appeal to appeal denial of 2255 from the District Court and for permission to proceed in Forma Pauperis

NOW COMES defendant Andre Simmons appearing through Pro Se counsel and hereby moves this court to remand his sentence, correct or set aside judgement, grant a notice of appeal and to proceed in Forma Pauperis. Defendant has provided a Forma Pauperis form on the 2nd page of this document.

### Background and Statement of the case

Defendant filed a timely notice of appeal, Direct Appeal, and 28 U.S.C. 2255. The District Court denied appellate relief. NOW COMES this motion to Appeal the denial of 2255 relief and to proceed in Forma Pauperis.

U.S.C.A. = 7th Circuit
RECEIVED
OCT 17 2013 DDS
GINO J. AGNELLO
CLERK

## Entrapment

The government's assertion that stand by counsel was not ineffective for not asserting to defendant an entrapment defense and that an entrapment defense has no constitutional relevance is without merit. See Sherman v U.S. 356 U.S. 369 2 L.ed 2d 848, 78 S.ct 819 (1958) and U.S. v Rodriquez 359 Fed Appx 833 2009 9th cir holding that to establish entrapment a defendant must show that he was induced to commit the crime. In exhibit B. it is clear that the government induced defendant by fronting the informant money to purchase drugs after the fact that defendant told the informant that he was not selling drugs and that he was looking for a job see exhibit. B

Testimony of Angela Howard
A. Yes, I believe that you said something about that, because you had talked to him that night on the phone and then you hung it up and then proceeded to tell me about the fact of how you fronted well Kurt fronted you 200.00 so at that time you told me where you got it fcom and you were getting back in the game.
Q. So up until that point I wasn't in the game meanin in the drug biz is that true.
A. That's true.
It is without a doubt that the government entraped defendant who was not financially stable at the time to get back in the game of selling drugs because defendant did not have the proceeds to finance the operation and the government fronted him the money to do so after he told the informant he was no longer selling drugs. The

attempts should have stopped here but the government proceeded to entrap defedant to sell

drugs by providing the finances to do so. In Sherman it was established that the informant

not only procured a source of narcotics but also induced defendant to return to the

habit and a judgement of acquittal was rendered thus appellate counsel was ineffective

for not arguing this fact on Direct Appeal.

### 5th amendment violation of coercion and threats to child

Threats to a suspects family or child even if implicit certainly render confessions

involuntary for purposes of Due Process see Lynum v Illinois 372 U.S. 528, 533, 83 S.ct

917, 9L.ed 2d 922 (1963) where confession coerced when police told a female suspect that

she was in jeopardy of losing welfare benefits and custody of her children if she did

not tell what happened pertaining to the crime. Here officer Pieper stated in Exhibit

C. that he would hate to put lil Andre (the witness and defendant's son in jail). see

Shannon Simmons testimony

Q. Can you tell me if anything out of the ordinary was said?

A. He said that he would hate--because my son Andre gets in trouble and he would hate

to put him in the same place youre going by the time he retires.

Q. The court-who was the one that said this to you

A. Officer Pieper. The witness then pointed to officer Pieper see exhibit C. transcript

from trial.

Defendant is prejudiced because his trial was not fair. The investigating officers

used coercive investigative techniques and sobliminal threats to coerce the witness to

testify or make a statement when in fact Shannon Simmons had yet to make a statement.

Q. what did you take that ass

A. (witness for the government) As a threat, like he would hate to have to do it.

Defendant is prejudiced because without this testimony or statement the government

could not link him to any crime and appellate counsel counsel is ineffective for not

arguing this constitutional violation on Direct appeal based on the proceedings during the criminal and custodial, and interrogation investigation periods and thus the court abused it's discretion and committed plain error by stating that appellate counsel was not ineffective by his anders brief when defendant's appellate brief was to be fully assessed by counsel and it was not. Defendant should bear no burden for counsel's errors see Hill V lockhart 474 U.S. 52,56 106 S.ct 366, 88L.ed 2d 203 1985, holding that counsel is to be effective at allstages of the proceedings.

### Abuse of Discretion for obstruction of justice enhancement

The enhancement for obstruction of justice lacks subject matter jurisdiction and is erroneous because the District Court did not give a reason for it's determination in light of U.S. v Sortini 2012 App Lexis 23307 and U.S. v West 628 F. 3d 425 7th Cir 2010  and U.S. v Johnson 612 F.3d 889 2010, holding when a District Court does not explain it's finding or reasons for finding perjury, reversal is required. The explanation  was bare bones stating I thought your testimony was filled with inaccuracies and lies. Futhermore in light of U.S. v Alleyne no. 11-9335 2013 any fact finding not presented to the jury lacks subject matter jurisdiction  and though their was no jury, counsel did not argue the perjured statement in closing arguements.

### Failure to provide miranda  Warning

Defendant asserts that the government did provide Miranda Warnings but it wasn't until after the statement that Sara Johnson signed see exhibit D.

Q. And only after officer Pieper made  all of these statements to you did he read you your rights,

A. Yes    Testimony of Sara johnson

This is proof that officer Pieper failed to issue Proper Miranda warnings.

### Coercion

Defendant asserts that it was officer Pieper who coerced the co:defendant's into admitting defendant's  role in the  drug sells see exhibit E.

Sara Johnson testimony

Q. In fact you don't say anything during the course of this interview about any of the things officer Pieper talked about do you.

A. Yes

Q. So durin the course of this interview it's officer Pieper that associate Andre
with drug dealin,

A. correct

It is without  a doubt that the detectives provided all the facts to make it easy to
coerce the defendant's into cooperating. See exhibit F.

Violation of the confrontation clause

The Agent on transcript 1-131 stated that a female had told him Andre Simmons
was back in the game. This violates the confrontation clause because defendant was
unable to cross examine the female to determine how she knew defendant was back in
the game. We find this testimony by the Agent or officer untruthful because the
informant testified that  he fronted the defendant 200 to get back in the game.
Angela Howard testified to this notion as well. Futhermore the government violated
Brady v Maryland 373 U.S. 83, 83 S.ct 1194, 10L.ed 2d 215 1963 and Giglio v U.S
405 U.S. 150, 154 (1972) by not exposing this statement to the defense so that
defendant could interview the witness and because the defendant believes  this
female  was manufactured by the government and because the prosecution knew of
this and failed to correct this Napue v Illinois has also been violated.


Futhermore the confrontation clause was violated  because the District Court
used the statment of Michael Cohwart  to determine the drug quantity at sentencing
when in fact Michael Cowhart did not testify to anything. Defendant is prejudiced
because without this statement his drug amount would have been lesser in amount and
thus appellate counsel is ineffective for not arguing this assertion to the confrontation
clause on Direct Appeal.

Because the detective is not a voice recognitionist and offered expert testimony
about defendant's voice on the phone the confrontation claause has been violated see
Bullcomy v New Mexico 89 CRL 533 U.S. 2011.

Overcharging defendant based on the 841 (a)

the authority of 841 (a) is not established when defendant acts as a broker in a drug transaction. The court or government must prove possession, intent, and knowledge of and thus this conviction lacks subject matter jurisdiction because dominion and control was not established.

The District Court's assertion that their is no constitutional issue for a witness who requested for an atorney during interrogation but did not receive one and was continued to be questioned is without merit see Arizona v Fulmiante 499 U.S. 279, 288 111 S.ct 1246, 113 L.ed 2d 302 1999, see also Mora v Barbie 4765 U.S. 412, 106 S.ct 1135 89 L.ed 410 1986. In exhibit A. their was trial transcript that the witness did requestt an attorney. See Edwards v Arizona 451 U.S. 477, 485 1015 S.ct 1880 68 L.ed 2d 378 1984 stating that law officers must immediately cease questioning a witness who has clearly asserted their right to have counsel present during interrogations. Defendant is prejudiced because without her testimony he would have had mitigating evidence for defense techniques taht his co defendants acted on their own.

Futhermore the District Court erred by not remanding based on the entrapment assertion. In Sherman v U.S. 356 U.S. 369 2 L.ed 2d 848, 78 S.ct 819 1958 the defendant did not include an affidavit detailing that he was entraped because the evidence concluded in the transcripts that he was indeed entrapped. Defendant asserted by the certificate of service under oath and that should been enough to satisfy the court.

Th e District Court also abused it's discretion and committed a plain error by stating U.S. v Alleyne no. 11-9335 2013 was not retroactive to defendant's case because he was not subject to a mandatory minimum when indeed the end guideline range and statutory provision was increased from 0 to 20 to 0 to 30. The 851 (a) was a constructive amendment that enhanced defendant's sentence   The District Court further committed error by not recusing himself from the petition based on his prejudice. The District Court committed an abuse of discretion by stating counsel on appellate review was not ineffective for not arguing these claims based on the entrapment, drug amount and other various claims when relief was present based on these assertions provided.

The court should have reviewed defendant's entrapment claim claim liberally and should have held a hearing because the court was unsure whether the  outcome would have been different with efficient counsel and effective counsel. Defendant proved that he was entrapped pursuant to Mcquiggin v Perkins no. 12-126 2013 and relief should have been granted because

Prior unrelated drug convictions improperly admitted based on rule 404 (b) and

ineffective appellate counsel

Rule 404 (b) provides that evidence of other acts is admissible to prove the character of a person.In order to show action in conformity  there must be other purposes such as proof of motive, opportunity, intent, plan, knowledge, identity or absense of mistake or accident. In determining whether evidence was properly admitted under rule 404 (b), the court must consider (1) the evidence is directed toward establishing a matter of issue other than the defendant's propensity to commit the crime charged (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter of issue (3) The evidence is sufficient to support a jury finding that the defendant committed the similar act and (4) the probative value of evidence is not substantially outweighed by the danger of unfair prejudice as required by 403 rules of evidence, citing U.S. v Hicks 635 F.3d 1063 7th cir (remanded) and U.S. v Harris 587 F.3d 861, 864-65 7th cir 2009. Courts have ruled that evidentiary ruling  made  over a defendant's objection for an abuse of discretion,see U.S. v Avila 557 F.3d 809, 819 (7th Cir 2009) If such an error has occurred reversal is required if such an error affects a defendant's substantial rights, see Fed R.  Crim 52 (a) holding that a plain error that affects  a defendant's substantial rights may be considered even though it was not brought to the court's attention. We must first determine whether the convictions are directed toward establishing a matter in issue other than defendant's propensity to sell drugs. The District Court admitted the convictions to establish knowledge and lack of mistake. Whether the prior convictions are relevant to the issue of knowledge or lack of mistake turns on whether they tend to make the existence of any fact that is of consequence to the determination of the active more probable or less probable    assertion See Fed R. Evid. 401 where evidence is relevant if it is intended to make a fact more or less probable than if it would  be without the evidence and the fact of consequence in determining the action. As to knowledge, the government cannot show that defendant's prior possession and distribution

of cocaine are consistent with the concept of defendant's 841 (a) (1) offense for distributing cocaine. In Hachett 245 F.3d 625, 643 7th cir 2001 the convictions were confirmed where the evidence was relevant top the aiding and abetting charge that defendant knew co: defendant was redistributing drugs and that the drugs would end up to two other co: defendant's. What was important was that the witness had prior to the extrinsic act sold cocaine to co:defendant who gave them to his brother. This case was remanded because unlawful distribution of cocaine is a general intent crime. In order for the government to introduce prior bad acts to show intent, the defendant must put his intent at first issue, see U.S. v Moore 425 F.3d 1061, 1069 7th cir 2009. In U.S. v Manganellis 864 F.2d at 529-31 where the courts remanded. The defendant was charged with distributing cocaine to an undercover agent and friend. The defendant denied making the sales and claimed he was mistakenly identified by the Agent and that his friend was lying. The appeals court found that the defendant's claim that he did not commit the alleged acts did not suffice to put his intent at issue and that as a result, evidence of his prior bad acts involving the sale of drugs on other occassions should not have been admitted into evidence. As in manganellis, defendant put his intent a issue.By merely claiming innocence would create an exception that would virtually swallow the rule against admission of evidence of prior misconduct in general intent cases, see U.S. v. Shackleford 738 F. 2d 776 (1984) where the government's statements that he was a drug dealer could be a basis for a jury to convict him for the charged offense. The government in the case above has failed to demonstrate that defendant's prior convictions established knowledge, lack of mistake, or intent. Although the evidence may have been sufficia to convict, the average judge or juror would have found the government's case significantly less persuasive without the prior convictions, see U.S. v Blanchard 542 F.3d 1133, 1151 7th cir 2008.

Futhermore there was also no direct evidence that defendant sold any drugs to co:defendants. No one witnessed the drug deals. Allowing a prosecutor to routinely introduce drug convictions in the case in chief without proving or indicating relevance to some concrete dispute between the litigants creates needless risk that a conviction will rest on the forbidden propensity inference, see U.S v jones 455 F.3d 800, 812 7th CIr 2006

See also U.S. v Fearns 501 F.2d 486 1974 reversed and remanded where prosecution went outside the record in his opening and closing arguments by asserting the evidence of similar acts. Defendant asserts that this court abused it's discretion by permitting his prior bad acts of possession of cocaine and intent to distribute into evidence pursuant to 404(b). Defendant further asserts that the government erred during closing arguments by arguing and stating, defendant's prior bad acts to prove he committed the instant case when the prior acts had no relevence. Defendant in this action did not knowingly intent to distribute cocaine nor did he possess cocaine on the day of the deliveries. The evidence could not be directed toward establishing a matter issue other than the defendant's propensity to commit the crime charged because the indictment was based on defendant directing others to distribute cocaine and his prior bad acts or convictions dealt with possession of cocaine and distribution of cocaine in which elements that defendant possessed the cocaine was proven, not that within his prior bad acts he directed others to distribute the cocaine. Because the prior convictions did not give rise to an inference of intent or share truly distinctive attributes within the crime which with defendant was charged and engaged in, can an inference be supported that defendant probably committed the crime. The following factors must be proven or enlisted to reverse for prior convictions introduced into 404 (b) rules of evidence. 1) the defendant's character or reputation 2) whether the government initially suggested the criminal activity 3) whether the defendant engaged in the criminal activity for profit 4) whether the defendant's initiated a reluctance to committ the offense that was overcome by government persuasion  5) nature of the persuasion.  It is without  a doubt that the inquiry into defendant's prior convictions persuaded the judge because the judge spoke of the prior bad acts at sentencing when the court made a determination of defendant's character. This led the judge to also convict the defendant based on the fact that he had prior to the instant case engaged in the distribution of drugs, though the bad acts had no relevance here because in the

prior acts defendant possessed and delivered the cocaine but here defendant was allegedly directing others to distribute cocaine. In U.S. v Hicks 635 F.3d 1063 7th cir the courts reversed the conviction for 841 a where Hicks selling of cocaine inadmissible to distributing 50 grams or more of cocaine, see also U.S. v Hucklefard 738 F.2d 776, 1984 where witness testified that defendant committed other bad acts of threatening proved inadmissible where defendant on trial for attemting to collect a debt by the use of extortionate means. The fact that defendant had previously used threats to obtain payment for a drug debt does not support a finding that he committed the acts alleged here. A defendant cannot be identified as the perpetrator of the charged act simply because he at other times committed the same common place variety of criminal acts except by reference to the forbidden inference of propensity. The question for the court is whether the characteristics relied upon are sufficiently idiosyncratic to permit an inference of pattern for purposes of proof, see also Supreme Court doctrine Kotteakos v u.S. 328 750, 764, 90 L.ed 1557, 66 S.ct 1239 (1946), see also U.S. v Miller 673 F.3d 688 7th cir 2011 remanded for new trial where admission of prior bad acts violated the character of 404 (b). It is too loosely to admit prior bad acts (convictions) especially in drug cases without paying close attention to both the legitimacy of the purpose for which the evidence is to be used and the need for it. The government failed to provide the proof of motive, plan, opportunity and thus reversal is required because their was no mistake or accident in introducing this evidence. Even where defendant admitted to the offenses through his testimony after numerous witnesses had already testified to his bad acts and the government had introduced his bad acts, the he could not object to the government's questioning of his bad acts because he had self representation. Because this court was swayed by defendant's prior bad acts and because the bad acts served no precedent to the case. the District court relied on these bad acts and therefore reversal is required. Because appellate counsel failed to argue this notion on direct appeal defendant is prejudiced and the appeals court would have remanded this case so that the District Court could make a determination on oral argument as to if the court

was swayed by the introduction of defendant's prior bad acts. thus appellate counsel was ineffective.

Investigating officer ignored the witness or co:defendant request for an attorney in violation of Supreme Court doctrine Edwards v Arizona 451 U.S. 477, 484-85 1015 S.ct 1880, 68 L.ed 2d 378 (1984) Danger of unfair prejudice and Miranda v Arizona 384 U.S. 436 86 S.ct 1602 16 L.ed 2d 694 (1966) unlawful interrogation

A valid Miranda waiver has to two distinct components. 1) The relinquishment of the right must be voluntarily in the sense that it was the product of a free and deliberate choice rather than the result of intimidation, coercion, or deception. 2) The waiver must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandonment. Only if the record reveals both uncovered choice and the requisite level of comprehension may a court promptly conclude that Miranda rights have been waived, see Mora v Burbie 475 U.S. 412, 421, 106 S.ct 1135 89 L.ed 410 (1986). In turn the use of confessions whether true or false is forbidden because the method used to extract then offends constitutional principle see Lego v tworney 404 U.S. 477, 482-85 92 S.ct 619 30 L.ed 2d 618 (1972). Coercive

police activity is not voluntary within the mening of the Due Process clause of the 14th amendment, see Colorado v Conelly 479 U.S. 137, 167, 107 S.ct 515 93 L.ed 2d 473 (1986). A statement is involuntary if the suspects will was overborne in such a way as to render the confession the product of coercion, see Arizona v Fulmiante 499 U.S. 279, 288 111 S.ct 1246, 113 L.ed 2d 302 1999. When viewed under the totality of the circumstances analysis, the record set forth in the court's discussion of claim two belies the assertion that the witness was coerced. Shannon     Simmons  stated during the interview before any questions were asked or answered that she wanted to speak with an attorney. The investigating detective still continued to ask her questions pertaining to Andre Simmons and the cocaine investigation including her current charges without advising her of her Miranda rights or warnings though she had invoked that principle when she asked for an attorney. The detective then went further to coerce the witness by explaining that he would hate to lock up lil Andre Simmons (her son) if she went to

jail and she needed to tell him what happened. Any statement made after she invoked her request for counsel is admissible and the prosecution committed <u>prosecutorial misconduct</u> by introducing this witness knowing that that the witness had been denied Miranda rights and had invoked a request cor counsel before her statement with police. See Edwards v Arizona 451 U.S. 477, 484-85 1015 S.ct 1880, 68 L.ed 2d 378 (1984) where the Supreme Court held that Law officers must immediately cease questioning a suspect who

has clearly asserted his rights to have counsel present during custodial interrogations see also Davis v U.S. 512 U.S. 452, 454, 114 S.ct 2350, 129 L.ed 2d 362 (1994) holding that the suspect must unambigously request counsel. He or she must articulate the desire to have counsel present and it must be clear and reasonable that a police officer would have understood the request for an attorney. In the record it is clear that the co:defendant or witness Shannon Simmons did not want to give a statement and requested an attorney to aid her from incriminating , herself or others but the detective ignored her request. Futhermore during the entire process of questioning not one government witness had been given Miranda Warnings . None of the witnesses knew that they had a right to be silent or that any Statements could be held against them. Because the witness Shannon simmons requested Counsel and the fact that none of the witnesses or co:defendant's had been given Miranda Warnings, the trial was prejudiced and the statements were involuntary. Had the Miranda Warnings been read, the co :defendant's who later became witnesses may have requested for an attorney and may have took a plea and not gave statements about defendant because only the statements of the co:defendant's and witnesses could link defendant to the crime or drug sells, see Miranda v Arizona 384 U.S. 436 86 S.ct 160 16 l.ed 2d 694 (1966) where statements admissible when obtained from an individual who is subject to custodial police interrogation and the necessity for procedures which assume that the individual is accorded his or her priviledge against self incrimination. In Miranda, a defendant was arrested and taken into custody. In the interrogation room the police swayed him to confess. It was held that the confession was inadmissible and he was not in any way apprised of his right to counsel or was his

priviledge against self-incrimination effectively protected in any other manner see also

Minnick v Mississippi supra 498 U.S. at 148-52, see Smith v Illinois 469 U.S. 91, 92-93

98-99, 105 S.ct 490, 83 L.ed 2d 488 (1984) 7th cir. Because Shannon Simmons invoked

her Miranda rights and the investigating officer ignored her request. Her statement and

testimony that she did in fact sell cocaine for Andre Simmons was admissible because

she could not make a decision after confering with counsel to give a statment and

admit her involvement and Andre Simmons involvement in this case, thus malacious

prosecution is sufficient to conclude and because the government committed prosecutorial

misconduct because the government was aware that the co:defendant had invoked her

Miranda rights, anew trial without her statement or testimony is within the discretion

of this court or a judgment of acquittal should be granted based on this constitutional

violation, see also Aleman v Hill of hanover Park 662 F.3d 897 7th cir 2011 where

defendant brought this notion to the court and the Dstrict Court committed an abuse

of discretion and plain error becaue the trial court failed to address the similar

similar subject because the extrinsic evidence was not contradicted by other evidence

and this court cannot adopt an impeachment by contradiction standard and permit evidence

that should not have been allowed thus this case is similar. The District Court committed

an abuse of discretion by not inquiring into the Miranda issue after defendant had

brought this notion to the court's attention. It was plain error to allow Shannon

simmons testimony and her testimony prejudiced defendant because without her concluding

the facts of the case, defendant could have made an alibi defense that his co: defendant's

acted on their own. The evidence here has been tainted by inadequate Miranda warnings,see

Watson v Detella 122 F.3d 450 7th cir 1997 and because the Supreme Court has held that

Miranda rights can only be invoked by the person being questioned. Miranda was violated

because the co:defendant asked for counsel  see Moran v barbie 475 U.S. 412, 433 n.4 106 S.ct

1135, 89 L.ed 2d 410 (1986) Supreme court. In Rogers v Richmond 365 US 534, 5 L.ed 2d 760

81 S.ct 735 (1961)

Supreme Court, the petitioner was convicted for murder after his confession. The police
brought in defendant's wife for questioning and moved defendant to a different jail.
Remanded for police producing a false confession. Like wise a threat to lock up her
son (lil Andre) made    Shannon     simmons confession involuntary. In cases involving
confessions, this court endures the strong felt attitude that important human values
are sacrificed where an agency of the government is the cause of securing a confession.
Or wrings a confession out of an accussed against his or her will. See Blackburn v Alabama
361 U.S. 199, 206-07 80 S.ct 274 4 L.ed 2d 242 (1960). In the instant case, the
witness invoked her Miranda rights and asked for an attorney. Thus appellate counsel
ineffective for failing to address this issue on Direct Appeal.
A remand or judgment of  acquittal is within the discretion of this court to address
this constiutional claim.

   Failure to make an Independent and factual determination of the drug amount
   beyond a reasonable doubt and violation of the Confrontation  Clause

      Defendant asserts that the District Court committed procedural error and abused
it's discretion and the error was plain by calculating the drug amount to be
 28.5 grams though the defendant had rejected to that amount and the only amount
proven by the deliveries was 22.5    grams. The defendant testified that a whole
one had a meaning of 100 eestasy pills. Futhermore the informant testified that
a whole one also had a meaning of  ecstasy pills. The government never proved beyond
a reasonable doubt that a whole one had a meaning of 28 grams or an  ounce nor did
the District Court. Even assuming  that Michael Cowart's    statements that defendant
normally purchased a golf ball but never seen an amount of cocaione was not
proof beyond a reasonable doubt. Therefore it is not plausible to conclude that
a whole one or a golf ball amount had a meaning of an ounce or 28 grams. By calculating
the drug amounts based on the transactions by co:defendant's. The drug amount would
have been 8.4 to 22.5 grams adding the career offender enhancement. Defendant's range
would be 188 to 235 months based on  a statutory guideline of 0 to 20. Because of

the invalid determination of the drug amount defendant's statutory maximum and minimum was increased from 0 to 20 to 5 to 40 though the only amount proven by the prepondorous of the evidence was __22.5__ grams, see U.S. v Kezthelyn 308 F.3d 557, 576 6th cir 2012 where the court failed to find a finding of the drug amount beyond a reasonable doubt based on 919 dollars in cash found on the defendant. Where the government failed to show by a prepoderance of the evidence that the money was connected to the purchase of cocaine, this case was remanded. It was  held that the 919 in cash could not be used as a proxy for additional quantity of cocaine. As in defendant's case, a statment statement of a golf ball amount or a whole one cannot be used for a proxy to determine the drug amount in this case. See also U.S. v Sandridge 38 F.3d 1032 6th cir 2004, U.S. v Jones 487 F.3d 518, 529 7th cir 2007 and U.S. v Edwards 581 F.3d 604 7th cir 2009 where the judge by a preponderance of evidence could inherent that the sales to customers during a period of time amounted to 12.75 grams and where defendant was arrested with 17 grams on his person. Although 17 grams was the amount the co defendant normally ordered. The 40 grams held by the district court  greatly exceeded the usual quantity the defendant would normally sell but it showed that defendant had access to considerable quantities of crack but a preponderance of evidence showed only 12.75 grams and 17 grams not the 50 grams or more he was charged with. Calculating the sentencing range. The court might have decided to sentence defendant severly than he did had he believed that defendant here transacted in excess of 28 grams. So if we are certain or nearly so that the judge would not have imposed a lower sentence which this court did well beyond the 262 month guideline minimum to a sentence of 240 months. The __6 to 7__ grams was material without the relevant conduct of a "golf ball" sized amount. Althoughthe judge could have estimated that the drug amount was 50 grams in accordance with the psi. the sentence imposed was based on a sentencelower  than the guideline range. this suggests that the decision to impose the minimum guideline sentence,suggests  a lean toward lenity making it difficult to predict the new drug quantity. In Gall v U.S. 552 U.S. 38 128 S.ct 586, 597 169 L.ed 2d 445 2007 the Supreme Court instructed that in reviving a sentence  the court

of appeals must first ensure that the District Court committed no procedural error such as failing to calculate or improperly calculate the sentencing range. The drug amount of 28.5 grams was not proven beyond a reasonable doubt forseeable to defendant based on material evidence, when in fact the material evidence was only 8.4 grams and the sentencing exposure exceeded because of this, see Apprendi v New Jersey. Futhermore appellate counsel was ineffective for failing to address this issue on appeal because the higher drug quantity increased the career offender guideline from a 32 based on 22.5 grams and a 34 based on 28.5 grams. See also U.S. v Taylor 471 F,3d 832 2006 7th cir, remanded where detective gave evidence that defendant trafficked in excess of 1,700 plants but the only evidence proven was 1,500 plants and thus the case was remanded. See also U.S. v Millet 510 F.3d 668 2007 7th cir remanded where the District Court failed to make a factual determination as to the amount of drugs. There was no independent finding that defendant conspired to sale 1,500 grams of cocaine. See also U.S.S.G § 1B1.3 App Note 2 holding a factual determination of drug quantity is needed to calculate the defendant's base offense level see also Bolchari v U.S. 430 F.3d 861 2003.

Here in the instant case their was no independent factual finding beyond a reasonable doubt proven that defendant possessed with intent to distribute 28.5 grams thus a

remand is within the interests of this court to make this finding.

Ergo the District Court further committed plain error and abused it's discretion by relying on Michael Cowart's statements that "he had observed defendant with a golf ball sized amount of crack cocaine" in calculating the drug amount because defendant was unable to confront or cross examine Michael Cowart. Thus the Confrontation clause has been violated because on cross examination, Michael Cowart might have lied under oath and defendant could have inquired more into what Michael Cowart had seen. The Confrontation clause is violated when a defendant is not afforded the right to cross examine witnesses who present evidence against him, therefore this sentence should be remanded to determine whether a 5th amendment right has been violated and for this court to make a determination of the drug amount without the extra 6 to 7 grams of crack cocaine because Michael Cowart never testified to this amount under oath.

Failure to invoke the notice requirement of

21 U.S.C.S § 851 (a)

Defendant asserts that the 851 (a) is governed by a notice requirement, seeU.S. sentencing guidelines manual 2012 holding that the United States attorney files an information with the court and serves a copy of such information on the person or counsel for the person stating in writing the previous convictions to be relied on. the service requirement is not discretionary. 21 U.S. C.S. § 851 (a) does not apply to charges used to establish career criminal status. Instead the requirement applies only when enhanced penalties are imposed under 21 U.S.C.S. § 841 (b). Defendant's subject to sentencing as career offenders under the U.S.

sentencing guidelines manual § 4B1.1 are not entitled to the same pretexts as defendant's subject to 841 (b). the filing of an 851 (a) though mandated is not

a prerequisite , when the government seeks career offender sentencing under the guidelines see U.S. v Robinson 14 F.3d 1200, 1206 7th cir 1994, see U.S. v Corner 598 F.3d 411 2010, see also U.S. v Redmond 667 F.3d 863 7th cir 2011 where courts remanded for resentencing where government seeked 851 (a) enhancements and career offender enhancements for same offense and defendant was not subject to 841 ( b) statue. Thus because defendant was not issued a service requirement

for the 851 (a) enhancement, 2) because defendant was not charged with 841 (b), 3.) because defendant did not receive a 851 (a) notice before trial, and because the government relied upon the same convictions to apply the career offender statue for the 851 (a) enhancement is invalid. Fed R. Civ 32 furnished adequate Due Proces protections to defendant's subject to §4B1.1 and 851 (a) and thus Due Process rights have been violated here. Without the 851a enhancement defendant's guideline range based on the career offender would be 168 to 210 months and nothing in the record assures us that the district court would exceed that range.

Entrapment

An affirmative defense of entrapment requires two elements (1) government inducement
of the crime and lack of predisposition on the part of ther defendant, see Sistrunk 622
F.3d 1333, 1358 11th cir 2010. Defendant asserts that though innocent of the charges
stemming from the indictment. The District Court held that defendant perjured
testimony because he believed defendant actually engaged in drug trafficking with
co:defendant's. Therefore defendant invokes the entrapment defense, though he did
present this defense at trial because stand by counsel told him it would not be a
good decision. Upon speaking with the informant, when the informant called to purchase
the drugs, defendant informed the informant that he did not no longer sell drugs and
he was looking for legitimate employment. the informant confirmed this conversation
under oath on the stand. The defendant further stated that he lacked the funds
to sell drugs again and the informant confirmed this testimony and evidence. The
government committed egrigous conduct by giving the informant 200 dollars to
defendant to get back into "the game", drug dealing. Thus when defendant was
approached by the informant and when the detective made the decision to purchase
drugs or front defendant drugs, defendant had straightened out his life. This should
have ended the ivestigation and the detective committed egrigous conduct by deciding
after knowing this fact to give the informant 200 dollars to front defendant to engage
in criminal activity. Nothing on the record was proven by Direct or circumstantial
evidence that defendant had been selling drugs prior to the inducement by the
government because defendant was incarcerated when the detective started the case
against him and was about to get released from jail. Entrapment occurs when the evil
intent and criminal design of the offense originate in the mind of the government
agent and the defendant would not have committed an offense of that character
except for the urging of the government. This is true in this case because without
the government fronting the money, defendant would not be able to purchase the drugs.
See State v Hilleshiem 172 Wis 2d 18-9, 492 N.W. 2d 381 see also Myrieu v U.S. 12-567
2012 certiorari filed where a person has a 14th

amendment right to be free from repugnant governmental entrapment methods  see Humphrey v Staszak 148 F.3d 719 7th cir 1998, U.S. v Cooke 110 F.3d 1288 7th cir 196, and U.S. v Rodriquez 359 Fed Appx 833 2009 9th cir holding that to establish entrapment the defendant must show by a preponderance of the evidence that he was induced to commit the crime and defendant has made that showing, see also Sherman v U.S. 356 U.S. 369, 2 L.ed 2d 848, 78 S.ct 819 (1958). In Sherman a case in the U.S. Southern District Of New york for unlawful sales of narcotics it was established by the undisputed testimony of the prosecutors witness as in this case that the sales made to a government informer were being brought about by the informant's persistent solitation in the face of obvious reluctance on the part of the defendant whom the informant believed to be undergoing a cure for narcotics and the informant's appeals to sympathy based on mutual experieces with the addiction. It was established that the informant not only procured a source of narcotics but also induced defendant to return to that habit and a judgment of acquittal was rendered. Likewise in the case of Simmons, he told the informant he was going legit and told him he lacked the funds to get back in the game and the detectives instead of encouraging defendant to get out the game. Induced him by fronting him buy money to purchase drugs and get back in the game. A remand should be rendered based on this analysis.

## Procedural Bar

Defendant asserted that he is not barred from claiming ineffective assistance of appellate claims pursuant to Massaro v U.S. 538 US 500, 155 L.ed 2d 714, 123 S.ct 1690 holding that a convicted federal criminal defendant may bring ineffective assistance of counsel claims in collateral proceedings pursuant to 28 USCS § 2255 regardless of whether defendant could have raised the claim on Direct Appeal.

Lack Of subject Matter Jurisdiction and invalid conviction of a non-existent offense pursuant to 841 (a) (1)

841 (a) (1) requires the following elements (1) knowledge that the drug is a controlled substance (2) possession (3) intent to distribute and transfer from one person to another. To convict defendant on the possession prong under 841 (a) the government is required to prove the possession prong whether constructive or actual and defendant must have the intent to exercise dominion and control , see U.S. v Kitchen 57 F.3d 516, 521 7th cir 1998. Defendant asserts that the  instant case involves drug transactions and controlled buys that he did not commit. Even  if the government insisted that defendant navigated the see of cocaine. 841 (a) (1) requires actual possession and intent to distribute. Each transaction made by the informant and the co:defendant never involved defendant. Their were no recorded conversations that defendant agreed     sell narcotics personally to the informant or that he spoke that someone else was planning to meet the  informant at  any of the targeted destinations. In U.S. v Kitchens 57 F.3d 516, 521 7th cir 1995 the government engineered a set up, by contacting an informant to purchase 2 kilos of cocaine from Kitchen. The informant was given 14,000 in cash and the rest would be fronted and given at a later date. Kitchen and an associate pulled up to the right of the informant's car. The two men and the informant proceeded to the rear of Kitchen's vehicle. When Kitchen popped the trunk and showed the informant the kilos, he was arrested  . Upon searching his residence in the name of a female that Kitchen was suspect of having a relationship with and living together, firearms and a receipt for 10,000 in repairs on the house was found. Defendant after being convicted after a jury trial for 841 (a) (1) filed an appeal and the 7th circuit reversed holding, absent

each element required an 841 (a) (1) cannot stand. The appeals court held, it was quite uncomfortable with the notion that momentary contact with an intent to prove narcotics and a showing of narcotics bear no relevance here because defendant was not charged with conspiracy in the instant case. Only deliveries that he did not commit or agree to commit.

The authority of 841 (a) is not established when defendant acts as a broker in a drug transaction. As the courts noted in Manella 7th cir, a stockbroker often will have custody of his customers stocks but rarely will he possess the stocks before buying them for a customer. Neither is this authority established merely because a defendant has the power or opportuntiy to make off with another persons property. As in the above case. Defendant did not deliver the cocaine nor possess it and even if the inquiry is proved that defendant instructed co:defendant's to sale the narcotics, that is not enough to satisfy all three elements of 841 (a) (1).

Procedural error and abuse of discretion for erroneous enhancement for obstruction of

Justice

---

In applying an enhancement for obstruction of justice. The District Court must make an independent finding necessary to establish all three factual predicates for a finding of perjury. The appellate Court has only reversed obstruction enhancements for inadequate findings when the sentencing judge presented a bae bones explanation such as "I thought your testimony was riddled with inaccuracies and lies". Defendant asserts that this court failed to determine or give a statement based on the determination for a finding of perjury. When a District Court does not explain it's reasons for finding that defendant has committed perjury, reversal is required, see U.S. v West 628 F.3d 425 7th cir 2010 and U.S. v Johnson 612 F.3d 889 2010 where findings of perjury inadequate to establish obstruction of justice where courts did not give a reason for it's determination and thus appellate counsel ineffective here for not arguing these facts. The District Court held that defendant's testimony was inaccurate and such a thin explanation leaves a defendant with a very poor idea of how exactly he perjured himself or obstructed justice. See also U.S. v Sortini 2012 App Lexis 23307 remanding where District Court, after a bench trial applied erroneous obstruction of justice enhancements without a clear explanation.

---

## 5th Amendment violation of Coercion

Threats to a suspects family or child even if implicit certainly render confessions involuntary for purposes of Due Process see Lynumn v Illinois 372 U.S. 528, 533, 83 S.ct 917, 9L.ed 2d 922 (1963) where confession coerced when police told a female suspect that she was in jeopardy of losing welfare benefits and custody of her children if she did not tell what happened pertaining to the crime  Defendant asserts that the government coerced witness Shannon  Simmons to testify and give a statement by telling her that she was going to jail and he would hate for Lil Andre (her son) to grow up without his mother and father and he would hate to have to arrest lil Andre one day. The

government committed prosecutorial misconduct by knowing that the investigative agent had committed this conduct and failed to bring this coerced statement to the court. The prosecutor should have not allowed the confession admitted into evidence and defendant objected to the use of her statement and testimony. See also Rogers v Richmond 365 U.S. 534, 543, 81 S.ct 735, 5 L.ed 2d 760 (1961) where confession coerced when police threatened to take defendant's wife into custody if he did not cooperate, see also Spano v New york  360 U.S. 315, 323 79 S.ct 1202, 3 L.ed 2d 1265 (1959) where confession coerced where the officer a close friend of defendant told defendant he would get into trouble if he did not cooperate. See also Anderor v Jones 385 F.3d 1043 7th cir 2003 where many potential witnesses were subject to intimidation and threats by officers seeking to gain evidence that would suggest Anderor committed a crime. Remanded. Witnesses were threatened with immediate suspension if they did not give a statement. One witness like __Shannon__ Simmons invoked her contractual rights to defense counsel to make a statement with representation but it was ignored. The investigating officer brought along two more officers to compel the witness to make  a statement. The 7th circuit of Appeals reversed, holding that the ill-advised and less than complimentary statement insisting detailed facts exonerated the statment and the combined inadequacy of the investigation might present a persuasive argument in closing arguments, thus the case remanded for a jury trial. Coercive police activity is necessary predicate that a confession is not voluntary, see Colorado v Coneely 471 U.S. 157, 167, 107 S.ct 515 93 L.ed 2d 473 (1986). Coercive police activity can be the result of either physical or psychological pressure see Brown v Hovell 644 F.3d 969, 979 9th cir 2011, see also Townsend v Sain 372 U.S. 293, 307 83 S.ct 745, 9 L.ed 2d 770 (1967) where  the investigating officer committed psychological trauma in it's coercion attempt to get a statement from __Shannon Simmons__  by threatening to lock up her son one day. The Fifth Amendment guarantees that no person shall be compelled in any criminal case to be a witness against himself or herself and the provision requires that a person's statement's under what ever circumstances they might be made be voluntary to be admissible at trial,see U.S. v braxter 112 F.3d 777, 780 4th Cir 1997 remanded, see also Columbe v Connecticut

367 U.S. 568, 602 81 S.ct 1860, 6 L.ed 2d 1037 (1961) holding that voluntariness depends on whether the defendant's statements were the product of an essentially free and unconstrained choice or there free will was overborned and the capacity for self destruction critically impaired see also U.S. v Rutledge 900 F.2d 1127, 1129 7th Cir 1990 remanded where 5th amendment violated where witness did not speak voluntarily. __Shannon___ Simmons testimony and statement was material because had she not testified, their could be no reason to conclude that the other co:defendant's did not act on their own. She too made drug transactions and not only admitted her involvement but___Andre____Simmons involvement as well. Coercion requires three elements 1 ) threat of violence, destruction, or bodily harm, 2) reasonable fear that the threat will be carried out 3) no reasonable opportunity to avoid the threat. Defendant asserts that _Shannon___ Simmons could not avoid the threat of her son being locked up  nor the confession because the detective had previously locked her sons's father up and she had asked for counsel and felt like she was being trapped because the detective ignored her request. Based on these findings a 5th Amendment violation has occurred and thus the statement of Shannon Simmons should not have been admitted into trial.

Confrontation Clause violation and actual Innocence

Sufficiency of evidence , abuse of discretion, and violation ofBrady v Maryland 373 U.S.

83, 83 S.ct 1194, 10 L.ed 2d 215 1963 and Giglio v u.S. 405 U.S. 150, 154 (1972)

Some of the inferences the government drafts are certainly plausible but their
significance is limited. A rational trier fact finder could have drawn a plausible
inference that appellate knew his co:defendant's were involved in illegal
activity because appellates ommissions  that he dealt with his co:defendants gave
a plausible link. Some even beared his child. However  we find that a rational trier
fact finder could not prove that appellate committed the charged crime of 841 (a) (1).
Appellate knew that the precise nature of the activity involved drugs. 2) Appellate
was involved in the trafficking of exstacy and the informant admitted defendant
sold exstacy. But why did this statement come at trial by the informant and not
during questioning so that defendant could be charged for the exstacy . This could
have concluded the informant and the co:defendant's had lied during the investigation
or had been witholding the truth. Co:defendant's sold and possessed the cocaine in this
indictment and defendant is not on trial for conspiracy. He is on trial for possession
with intent. Any conclusion by the District Court to go beyond the charging instrument
is a product of mere speculation. To this point we have addressed the probative value of
individual pieces of evidence introduced by the government. It is however the cumulative
probability of guilt created by all the evidence, rather than the probability of guilt
created by a single piece of evidence that is the torchstone in deciding whether a
reasonable jury could find that defendant possessed with intent to distribute the
cocaine sold in the drug transactions on the dates of_____

_____.

Evaluating the evidence most favorable to the government and the evidence as a whole,
their is no indicia towards the evidence of record, see U.S. v Williams 698 F.3d 374, 379 7th
cir 2012. An 841 (a) nor conspiracy can be satisfied by a piling of inference upon
inference. In Re winship 397 U.S. 358, 364 90 S.ct 1068 25 l.ed 2d 368 (19700 the 7th
circuit held that a conviction of  a crime requires proof beyond a reasonable doubt of
every fact necesary to constitute the crime. It is beyond a reasonable doubt that the

government can prove a mere conspiracy here. But defendant is charged with 841 (a). Defendant did not agree to make a transaction, he did not make a transaction, nor was he ever in possession of the cocaine sold on the particular dates. Futher more the District Court abused it's discretion by not allowing defendant to ask the informant Schulte the question that these kids (Co:defendants) were acting on their own. This was a violation of the confrontation clause. Defendant is prejudiced because the informant, who only dealt with co:defendant could have made a professional opinion because he dealt with the co:defendant's. Defendant asserts that the informant misidentified Shannon Simmons as Lisa Lazot and the informant gave inconsistent testimony that should have weighed toward his credibility when on page 2 0f 128 of the transcript he testified that defendant gave up/ selling crack cocaine and thus his testimony was inconsistent when he stated defendant was getting back into the game. This court abused it's discretion by by not allowing Angela Howard to answer defendant's questions which were impeaching. there was evidence that she told defendant he would not get the truck back because he would not except a plea deal, see Giglio v U.S. 405 U.S. 150, 154 (1972). Officer Pieper told the informant that the drugs were purchased from the phone number 559 3621 but no drugs were ever purchased from Andre Simmons. Officer Peiper further stated that Sara Johnson sold the drugs to the informant and Shannon Simmons testified that she had never seen defendant with drugs, see transcript 1 of 130. The Agent on transcript 1-131 stated that a female had told him Andre Simmons was back in business and the court abused it's discretion and the prosecution committed a Brady claim for not disclosing this statement to defendant before trial see Brady v Maryland 373 U.S. 83, 83 S.ct 1194 10 L.ed 2d 215 (1963). Defendant never had a chance to confront the witness who told the investigating Agent this information and thus the confrontation clause has been violated. It is plausible that the detective committed egrigous police misconduct by manufacturing evidence because defendant did not have an opportuniy to confront the female who told

the detective that Andre was back in business. Sara Johnson testified that officer Pieper first told her Andre Simmons was back selling cocaine. He stated he believed Andre had been selling drugs for some time but they could not get evidence of it. Officer Roem testified that he never seen defendant with drugs nor seen him inside any of the vehicles during the cocaine transactions. For an 841 (a) to stand and survive collateral attack a knowingly possession is required. Futhermore the cocaine was never sent to the lab. Justin Rapport testified the drugs were suspected cocaine. Officer Benrod also testified he never seen defendant deliver the drugs in the tahoe. Kyle Jentzc testified that no drugs were found inside the residence. It is further noted that the government informant testified that if Andre is afforded to get out of jail then Jeff Wilson would be watching. Defendant's finger prints was not found on the baggie of cocaine and Kari Flaherty testified that she never seen defendant with drugs. If defendant had of been selling drugs he would not need a front to get back in the game from the government. Futhemore this court abused it's discretion by allowing Mr. Jarosz to give hearsay testimony that females stated Andre Simmons was out of jail and back in business, without revealing the female who said it. The prosecution knew of this but still continued to proceed with the trial in violation of Napue v Illinois 360 U.S. 264, 269, 79 S.ct 1173, 3 L.ed 2d 1217 (1959).

Further violations of the Confrontation Clause and

Procedural error for admitting expert testimony

Defendant asserts that this court committed procedural error by admitting expert testimony from the investigating officer Pieper that it was defendant's voice on the recorded tapes. Defendant rejected to this use and findings of Piepers testimony being admitted for expert testimony. Defendant was prejudiced because had the court felt that this testimony was not accurate. It would have produced a nexus that it was not defendant on the taped conversations and this inference could have concluded that it was not defendant who engaged in criminal activity, see Bullcomy . v New Mexico 89 CRL 533 U.S. 2011.

In Bull comy the Supreme Court held that the Sixth Amendment's Confrontation Clause was not satisfied by an accussed's opportunity to cross examine someone from the labratory who was knowledgeable about the labs practice conduct but who was not the particular analysist who read the report. The court stressed that the testimony required the analyst to do more than just merely read the machines results and that his certification did more than just establish the chain of custody. Like in the instant case, the detective acted as a professional voice recognitionist and a person who is a voice recognitionist does more than just listens to voices and determine whether it is the person the government says it is, see also State v Navarette N.M 32,888 2013 where the Confrontation clause is violated when the testimonial statements is offered for the truth. When a pathologist offered expert testimony or expert opinion based on sujective observations recorded in a report of an autopsy performed by someone else, the confrontation clause was violated, see also Crawford V Washington 541 us 36, 158 L.ed 2d 177, 124 S.ct 1354 2004 Supreme Court, see also Martin v State, Del no 149 2012, Williams v Illinois 91 CRL 357 holding that results from what the witness testifies to as a basis for his or her expert opinion are not to be admitted for the truth and this error was not harmless, see Fed R. Crim P. 52 (a). Because the detective is not a professional voice recognitionist but offered expert testimony. His testimony was material and should have not been admitted as expert testimony therefore defendant is prejudiced because the District Court was swayed into believing that it was indeed defendant on the taped recording and that defendant had engaged in criminal conduct..

Violations of defendant's Sixth Amendment right to counsel

A request for counsel must be unequivocal see Meeks v Craven 482 F.2d 465, 466-68 9th cir 1973. In determining whether a defendant has knowingly and intelligently waived his right to counsel we will only indulge only into the reasonable presumption against waiver, see Faretta v California 422 U.S. 806, 45 L.ed 2d 562, 95 S.ct 2525 (1975). A waiver of counsel must be intelligent and free see Davis 532 F.3d 132, 242 149 2d 2008, see also Frazier-El 204 F.4d 553, 558 4th cir 2010. Defendant asserts that he did not have a free choice of conflict free counsel or to make a decision in self representation. Defendant asserts that at a hearing to excuse a second attorney, the District Court told him that, this court would not give defendant another attorney. Defendant then stated, "are you telling me I have to represent myself" and this court forced defendant into making that decision. Defendant did not request to self represent himself. The court of appeals has held that a defendant who chooses to represent himself must be allowed to make that choice even if it works ultimately to his demise, see U.S. v Peppers 302 F.3d 120, 130 3rd cir 2002. If a defendant equivocated he is presumed to have requested the assistance of counsel, see U.S. v Bennett 539 F.2d 45, 49-51 and thus this court committed procedural error by allowing defendant to represent himself after he had equivocated.

Recusal

To establish a basis for recusal under 28 U.S.C.S. § 455 (a) movants must overcome a presumption of impartiability and the burden must be sustantial. Defendant asserts that because the District Court committed procedural error by making a perjury determination without a showing of a reason why and because this **court has prejudiced defendant. Recusal is neccessary.**

## Lack Of Law books and access to Law Library

Defendant asserts that his fundamental rights to a fair trial were violated based on

the District Court's denial of law books to present his case. Defendant asserts that he was

proceeding as self representation and this court abused it's discretion by not allowing

law materials when in fact the detention center did not have a law library and defendant

was indigent   Armento v Dickinson 2012 U.S. Dist Lexis 156328 2012 remanded where

District Court failed to give defendant access to law library. The District Court

could have exercised it's discretion and moved defendant to a facility where he could

have access to a law library and defendant was prejudiced because  without access

to those legal materials he could not produce a layman's defense.

## Failure to communicate a plea offer

Defendant states that he would have accepted the plea offer but his counsel
informed him that he faced the same amount of time if he proceeded to trial. Defendant
asserts that he would have  accepted the plea offer of 15 years and  6 months because
at the time of the offer the 851 (a) enhancment had not been filed. The offer was reasonable
and defendant would have accepted this offer. The offer would not have been withdrawn from
by the government because it was within thte guidelines. Counsel is to be effective
at all stages including the plea stages see U.S. v Cronic 466 U.S. 648, 104 S.ct 2039, 80
L.ed 2d 657 (1984), Because counsel advised defendant with an erroneous sentencing
exposure,defendant received  ineffective assistance of counsel at the plea stages
because he would  not have proceeded to trial had he known that he could have faced
more tha twenty years. See also Titlow   Burt no. 10-2488 certiorari filed Feb 2013,see
also Lafler v Cooper 132 S.ct 1376, 1385, 182 L.ed 2d 398 2012.

## Conclusion

Due process requires the government to present evidence sufficient to prove each element
beyond a reasonable doubt see Jackson v Virginia 443 U.S. 307, 316 99 S.ct 2781 61 L.ed 2d 560
(1979). Mere conversations about drug activity recorded on the phone does not constitute
an 841 (a) offense see U.S. v Maserati   F.3d 330 1993, See U.S. v Boyd 2012 U.S. App
Lexis 9685 2012 5th Cir. Drug transactions by other co:defendants do not establish an
841 (a) offense. Futhermore defendant's 5th Amendment rights were violated based on
violations of the confrontation clause. The drug quantity was not proven beyond a
reasonable doubt and thus defendant was sentenced based on inaccurate information.

The authority of 841 (a) is not established when defendant acts as a broker in a drug transaction. The Court or government must prove possession ,intent and knowledge of and thus this conviction lacks subject matter jurisdiction because dominion and control  cannot be established..


## Conclusion

Defendant  prays this court grant relief.

Dated : October 3, 2013

Respectfully Submitted

Andre Simmons # 06930-090


---

## Certificate of service

I  Andre Simmons   do certify that the following motion is mailed via United States pre-paid mail at the following location on this ___6th__ day of August 2013.

Federal Court Clerk

Robert W. Kastenmier United States Courthouse

120 North Henry Street, room 320

Madison, WI 53703-2559

Everett Mckinley Dirksen U.S. Courthouse
219 South Dearborn Street
Chiocgo Illinois 60604

Respectfully Submitted

Andre Simmons

P.O. Box 5888

YAZOO CITY FCC 39194

Andre H. Simmons
06930-090

Exhibit A.

1  A     Yes.

2  Q     Do you remember that now?

3  A     I don't quite remember the conversation that I had

4  with him that day, but -- exactly what was said because

5  I never received anything like that.  But alls I do

6  remember is saying that I want an attorney.  I don't

7  remember what he said, what kind of trouble I was in.

8  Q     You stated that you did not receive nothing like

9  that.  Did you receive anything else?  You stated that

10 you received -- I'm not sure.

11 A     I never received that document, but I received

12 copies of my -- when I had my interview with the police.

13 I received a copy of that.

14 Q     With the document I just had up there, you see that

15 it state -- it state that, right, that what potential

16 trouble you're looking at and so on; is that correct?

17 A     It just -- it says that, but it didn't state what I

18 was going to be charged with.  That's what you're

19 talking about.

20 Q     Right.  But it stated that you was gonna be in

21 potential trouble.  And then can you state what did you

22 say after he stated that?

23 A     He wanted to ask me some questions and I said I

24 wanted an attorney.

25 Q     I'm talkin' about on the document.  You did say all
                    SARA JOHNSON - CROSS

Exhibit B.

1  Q    Isn't it -- in your interview you said that you

2  knew that I went over there to meet Kurt, correct?

3  A    I don't recall.

4  Q    Would it refresh your recollection to look at the

5  transcript?

6  A    Yes.

7         THE COURT:  This is still the interview

8  transcript, correct?

9         THE DEFENDANT:  Yes, Ma'am.

10        MR. JAROSZ:  What page are we on?

11        MR. SCHWARTZ:  28.

12        THE DEFENDANT:  28.

13        THE COURT:  38?

14        THE DEFENDANT:  28.

15        THE COURT:  28.  Thank you.

16        THE DEFENDANT:  10 and 11.

17        THE WITNESS:  I just read what's on here.

18  BY THE DEFENDANT:

19  Q    Did you state that?

20  A    Yes.

21        MR. JAROSZ:  What did -- what did -- I guess if

22  I could get -- I don't know.

23        THE COURT:  For the record you have to explain

24  what --

25        THE DEFENDANT:  She just --
              ANGELA HOWARD - CROSS

1  BY THE DEFENDANT:

2  Q    So it is true that you told Detective Pieper that

3  you remember me goin' over there?

4  A    Yes, but I believe that you had said something

5  about that, because you had talked to him that night on

6  the phone and then you hung up and then proceeded to

7  tell me about the fact of how you -- Kurt fronted you

8  $200, so at that time you told me where you got it from

9  and you were getting back in the game, and all that was

10 at that time, which obviously occurred at my house in my

11 bed.

12 Q    So up until that point I wasn't in the game,

13 meanin' in the drug biz; is that true?

14 A    That's true.

15 Q    You stated that you went with me when I got back in

16 the game, correct?

17       MR. JAROSZ:  Objection, Your Honor.  I couldn't

18 understand what he said.  I'm dead serious.  Did he say

19 you said you were not with me or you were with me?

20       THE DEFENDANT:  That you were with me.

21       THE COURT:  Are you asking -- you stated that

22 you were with me when I got back into the game?  That's

23 not what she said.

24       THE DEFENDANT:  She said --

25 BY THE DEFENDANT:
                ANGELA HOWARD - CROSS

Exhibit C.

```
1    A    Yes.
2    Q    Do you feel that you got to testify a certain way?
3    A    No.
4    Q    You was interviewed by Pieper again, correct?
5    A    Yes.
6    Q    You was in jail at this time, correct?
7    A    Yes.
8    Q    Can you tell me if anything out of the ordinary was
9    said?
10   A    He said that he would hate -- because my son Andre
11   gets in trouble and he would hate to have to put him in
12   the same place you're going by the time he retires.
13            THE COURT:  I'm sorry, who was the one that
14   said this to you?
15            THE WITNESS:  Officer Pieper.
16            THE COURT:  You're pointing to Mr. Pieper,
17   where Mr. Pieper was sitting?
18            THE WITNESS:  Yeah.
19            THE COURT:  Thank you.
20   BY THE DEFENDANT:
21   Q    What did you take that to mean?
22   A    As a threat, like he would hate to have to do it.
23   Q    When you was questioned by Pieper at your mom's
24   house, you didn't tell him the truth, did you?
25   A    What do you mean by that?
                    SHANNON SIMMONS - CROSS
```

1          MR. JAROSZ:  I believe he's saying Kurt

2    Schulte.

3          THE WITNESS:  Oh, oh.  Yes.  All right.

4    BY THE DEFENDANT:

5    Q    And did not deliver -- I didn't -- I did not

6    deliver the crack; you did, correct?

7    A    By your direction, and the money went straight back

8    into your pocket.

9    Q    You gave me the money?

10   A    Yes.

11   Q    And you did -- did not state first that you

12   delivered crack cocaine at Andre's direction.  It was

13   Officer Pieper who first said this, wasn't it?

14   A    What did you mean by that?

15   Q    That you wasn't the first one who stated that I

16   gave -- you didn't just say okay, Andre Simmons directed

17   me to sell drugs.  It was Officer Piepers (sic) who

18   stated that, correct?

19   A    Yes, he said that.

20   Q    And then Officer Pieper says to you if Andre is the

21   center on this wheel, you're one of the spokes on the

22   wheel, didn't he?

23   A    Yes.

24   Q    So it's Officer Pieper and not you that places

25   Andre as the center of the wheel, isn't it?
                    SARA JOHNSON - CROSS

Exhibit D. Continued

```
 1   A    Yes.
 2   Q    In fact, until this time you have essentially said
 3   nothin' in this interview, correct?
 4   A    Yes.
 5   Q    And then Officer Pieper tells you he's arrested two
 6   people and he will interview every one of them and those
 7   that are not cooperative will be looked at thoroughly by
 8   the DA and the U.S. Attorney Office for potential
 9   charges, didn't he?
10   A    Yes.
11   Q    And then he told you what happened to you will
12   depend upon your cooperation, didn't he?
13   A    Yes.
14   Q    And only Officer -- only after Officer Pieper made
15   all of these statements to you did he read you your
16   rights, correct?
17   A    Yes.
18   Q    And in fact, you don't say anything durin' the
19   course of this interview about any of the things Officer
20   Pieper talked about, do you?
21   A    Yes.
22   Q    So durin' the course of this interview, it's
23   Officer Pieper that associate Andre with phone number
24   559-3621; it's Officer Pieper that associate Andre with
25   drug dealin'; it's Officer Pieper that told you he knew
```

SARA JOHNSON - CROSS